Good morning, Your Honors. May it please the Court, Laura Schaffer appearing for Appellant Mr. Singh. I'd like to reserve two minutes for rebuttal with the Court's permission. Sure. I'll try to remind you, but keep track of your own time as well. Thank you very much. The only issue before the Court in this appeal today is whether the forfeiture is grossly disproportionate to the conduct in this case. And the Court in Bajikadzian turned first to the fines set by the Legislature in determining whether a fine or a forfeiture is grossly disproportionate. The Court grants substantial deference to the Legislature's determination regarding whether a fine is disproportionate and the penalties that the Legislature has set. Now, in this case, the guideline range, which this Court and Bajikadzian both referred to as sort of the benchmark, was $10,000 to $100,000. So the $2 million forfeiture imposed in this case was 200 times the minimum fine and 20 times the, that's the guideline fine, and 20 times the maximum guideline fine. And there's, I haven't found any case in this, at least in this circuit, that has held that such a fine, such a magnitude of fine could withstand constitutional scrutiny. Counsel, if we're looking at the guideline fine, I mean, I take it the reason that that's relevant is it's a measure of the seriousness of the offense or the Congress and the Sentencing Commission's judgment as to the seriousness of the offense. And if we're looking at it for that reason, don't we also have to look at the fact that they provided for up to 71 months of imprisonment? I mean, that seems like evidence that they viewed it as a very serious offense, doesn't it? Well, it is a serious offense, but the fine actually is they tied the determination of whether a forfeiture is grossly disproportionate to the guidelines as well. And the guidelines more accurately represent the financial penalty that should be imposed in a particular case and legislative judgment regarding the financial penalty that should be imposed in the particular case. And you have to realize, too, that, you know, this fine, this forfeiture is four times the maximum statutory fine. That's the, that is, the statutory fine is what would be imposed in, for the very worst offender. And so that is, greatly exceeds the statutory maximum fine. Now, so it not only exceeds the guideline fine, but it also exceeds that maximum fine. And that is, you know, it's difficult to measure or to determine, you know, what amount, what monetary amount becomes when it becomes disproportionate. But I think it's very clear in Bajikadzian that although you do look to the sentence, you know, you look to the monetary penalties, because how are you going to measure it otherwise? Well, it's not a single factor type of analysis. We look to the factors set out by Bajikadzian. And there are numerous other factors that weigh in favor of forfeiture in this case as well. So I agree, 20 times the maximum provided by the guidelines seems high. But then we look to other factors like the 71-month sentence as compared to the six months in that case and the nature and extent of the crime. So what is your best argument that incorporates the other factors set out by the case as well? Well, these were all legitimate funds. The defense presented evidence, substantial evidence. Legitimate funds that was non-related to drug trafficking? Well, there was, Mr. Singh was paid some money to ship these packages. He was paid the standard shipping rates. The government did not, they didn't present any evidence to contest that. And that was stated in the sentencing memorandum that he was paid these standard rates. This represented just a very, a fraction, a fraction of the amount of money that he obtained from this entire business. Most of the money, the $4 million, the defense presented business records to show that the $4 million was mostly from Western Union, the Western Union funds. So the business records showed there was $4 million taken in or over $4 million taken in through this business. You know, this was a. . . Mr. Singh was aware that some of the funds were as a result of drug trafficking, correct? Only by virtue of the fact that the Garcias paid him to ship these hundreds of packages. But the $2 million, the vast majority of that was, in effect, was the Western Union funds and other legitimate shipping business. In the plea agreement, I'm looking at paragraph 16, page 191, it says, Singh knew or believed that the funds, which I think in context refers to the funds that were at issue here for the structuring offense, Singh knew or believed that the funds were proceeds of unlawful activity or were intended to promote unlawful activity. So it seems like he may have had the argument you're making, but he agreed. Well, but if you read what comes before that paragraph, the entire sentence, it says basically based on the structuring. In other words, he was saying, I agree that these funds were proceeds of an unlawful activity, but it was the structuring as well as some fraction of an amount, which was also due to the Garcias paying him for the shipping. So in other words, the way that this is phrased in the plea agreement is that it says due to his structuring activities, his activities as a bank compliance officer, and the shipping activity, these were proceeds of an unlawful transaction. It was the government's position below that these were not all proceeds of a drug ring. There was only a very small portion of these that would have been proceeds by virtue of the fact that the Garcias paid him to ship these packages. They would arrive packaged, and he paid standard rates, or the Garcias paid standard rates to Singh. So there's a very small amount of money that was actually proceeds, and the government really didn't take the position that they're really taking here on appeal that all these funds were proceeds of a drug ring. They didn't dispute this. I mean, they essentially said, look, we don't know, and they didn't present any evidence to the contrary. So the lack of evidence can't substitute for evidence that there was actually that these were all proceeds, and the defense presented the business records to show, no, most of these funds, almost the vast majority of these funds were from a legitimate shipping business. This is a mom-and-pop business that was set up in 2000 before the Garcias came on the scene. He opened another store in 2008, again, before the Garcias came on the scene, and was operating a legitimate business that was bringing in a lot of cash from this Western Union business. And this money would go into the bank accounts, and it would come out the next day. Western Union would take it out the next day. And almost $3 million, I think it was $3 million, in excess of $3 million of the money generated that went through the stores was Western Union money. And the government didn't present any evidence to dispute that. So we made a prima facie case this was all legitimate funds. So despite the plea agreement is somewhat deceptive with respect to how it's worded, if you look at that, and the structuring. I'm assuming the language of the plea agreement, the paragraph 16 that Judge Miller is asking about, was negotiated between the parties. Yes, obviously it was negotiated between the parties. But it wasn't very clear as to what portion of it was proceeds of drug trafficking. That is correct. That is correct, and it should be construed against the government. I see that I'm running out of time. Save time. Yes. All right. Okay, thank you very much. May it please the court, Zach Howe on behalf of the United States. I'll begin with the second factor, which seems to be what much of the discussion has related to, the relation of the structuring offense to other illegal acts. Here I think it's important to begin with the district court's findings, which is that regardless of the percentage of funds that were drug money versus legitimate money, the purpose of all of the structuring was to hide drug shipments. That's at page 48 and 49 of the record. And that's well supported by the plea agreement, the paragraph that Judge Miller cites. It's well supported by the fact that Singh is taking other measures to hide his drug shipments, such as spreading shipments across multiple shippers. It's well supported by the fact that these drug shipments and this structuring is occurring at the very same time. So certainly it was not a clearly erroneous finding. And therefore, the structuring did relate to other illegal activities, which is the inquiry under the second Bajikashian factor. Singh is essentially asking to be rewarded for the success of his structuring offense. If you look at page 25 of the opening brief, he says, because of my structuring, the government can't determine how much of the funds is legitimate versus drug money. And because of that, he's saying he should be rewarded by a much lower forfeiture. I'm not aware of any case law that supports that approach. And on the contrary, it is Singh's burden to show the unconstitutionality of this forfeiture. And he's not done that. Can you clarify the record? Because counsel indicated, you know, in connection with the disproportionality analysis is that, look, we were able to show. And the government didn't have any evidence to the contrary, that these were mostly legitimate funds that were forfeited. Did the government make that concession below? No, I think the argument and this begins at around page 35 of the record in the sentencing hearing and continues for another five or six pages of the transcript. The government's position has always been that because of the success of Singh's structuring crime, it was impossible to determine the exact amount of the proportion of legitimate to illegitimate funds. But I think the government has always suggested that it could be a quite substantial portion. And I think the record supports that. So, for example, if you look at paragraph 10 of the PSR, Singh is having a conversation with an informant, a government informant who is working for the drug trafficking organization whose drugs he is shipping across the country. And he says, you guys are the only reason we're busy around here. So, in other words, Singh clearly believes. Is there any objection to paragraph 10 by the defense? I don't believe there was. The objections were discussed at page 46 and 47 by the district court. I don't recall an objection to that paragraph. So Singh clearly believes that the drug shipments are vital to his business. In addition, we also lay out at pages 19 through 21 of our brief why the calculations he's coming up with based on these business records, in fact, are based on a bunch of assumptions that really don't make a lot of sense. And when you take out all of those assumptions, the percentage of the drug money could have been upwards of 23 percent or perhaps even greater. Again, it's tough to tell because of the structuring. But suffice it to say, I think he's off base in saying that it was a minuscule proportion of the overall structured funds. The second point that counsel raised was about the maximum penalties. Judge Miller, I think you're right. We have to look at the entirety of the penalties, which includes the 71-month sentence here, maximum guidelines sentence, as well as the other Bozsikagian factors. And courts have routinely affirmed forfeitures that are many times larger than the maximum guidelines fine when all of those other factors weigh in favor of the forfeiture. So that was the case in this court's McBee decision, in the Seventh Circuit's Malwicka decision, in the Ahmaud decision from the Fourth Circuit, the Costello decision from the Second Circuit, the Rydell decision from the District of Hawaii, and a decision that this court affirmed. So this case is well within all of that precedent, affirming forfeitures that are many times larger than the maximum guidelines fine because of the other factors. As to the statutory maximum fine, that deserves less weight, as this court has said. But I should note that the maximum statutory fine here is purely a product of the way that this case was charged. So I'd use a comparison to Malwicka. In that case, it was also a structuring offense. There were 23 structured transactions. But rather than charging it as one offense, like the case here, they charged it as 23 separate structuring offenses. So you simply added up all of the statutory penalties, and you came up with a maximum statutory fine of a little under $6 million. Well, here it easily could have been charged as 469 counts of structuring currency transactions. And then the maximum statutory fine would have been somewhere in the ballpark of $117 million. How does that work? Is each deposit a separate violation, in your view? Or how can you count? So you can charge them separately. The only difference comes in with there's a provision in 31 U.S.C. 5317C that says that if you charge it as one offense and it involves at least 12 months of activity and $100,000 in total structuring, then the maximum statutory fine doubles. So that wouldn't kick in if you charged these as one-off offenses. But otherwise, it's perfectly permissible to charge them as single, one-time structuring offenses. That's exactly what happened in Malwica. So all of this is just a long way of saying that the maximum statutory fine could have been much, much higher than this forfeiture. But again, that's of secondary importance to the guidelines fine. But all of those cases I've just ticked off have said when all of the other Bajikasian factors weigh in favor of the forfeiture, then the fact that the fine or the forfeiture is greater than the maximum guidelines fine is not dispositive. I do want to underscore the importance of the structuring offense itself. A lot of the discussion here has been on the fact that Singh was hiding drug shipments. But I don't want to lose sight of the fact that the structuring offense itself here is quite dangerous. Just as Malwica and Ahmad explained, this doesn't just affect the government. It doesn't just cost the government information. It causes banks to violate their reporting obligations every time Singh commits his crime. It places clients' money at risk because he's using their money for the structuring. In this case, it's especially aggravated because Singh is a Bank Secrecy Act compliance officer, and that means he's tasked with training his employees on how to comply with the Bank Secrecy Act. But yet his employees didn't get that training because instead of enforcing the act that he's agreed to uphold, he's instead thwarting that act. Can I ask you, I mean, the suggestion that there's harm from placing the client's money at risk seems a little bit circular. I mean, their money is only at risk if we uphold a forfeiture of the money. So to invoke that as a justification for why this is a serious crime that should support a forfeiture, well, it seems circular, as I said. Sure, I understand the concern. So Malwica, I think, had that same concern. And so it said the fact that you're placing other clients' money at risk does not weigh against the forfeiture, but it doesn't weigh in favor of the forfeiture either. Ahmad, the Fourth Circuit, took a different approach and said it was an aggravating factor. So suffice it to say it's an open question, but at the very least it's neutral. At best, I think it supports the forfeiture here. And then the final factor I don't think I've covered is the harm caused by this offense. The harm here is fairly obvious in connection with the tie to drugs because you have hundreds of shipments of drugs going out all across the country over a 26-month-long period. These are dangerous opioids that Singh is helping facilitate shipments of. And then you have the harm that I just listed off with relation to the financial institutions, the employees who aren't getting their training. I'd also draw a comparison to McBee here. That's a case from this court. It was a Medicare fraud case. And the defendant in that case said, well, I gave all of the medical treatment that I promised to give, so in that sense the government got the benefit of its bargain. But this court still held that it undermines confidence in the Medicare system at large and makes it more difficult to administer when you have fraud running rampant within the system. Well, here I think it's particularly damaging when you have a Bank Secrecy Act officer who is thwarting the very act that he has agreed to uphold. So I think that harm is similar to the harm that this court identified in McBee. So for all of those reasons, I think that the Bajikashian factors weigh well in favor of the forfeiture. They show that it was not disproportionate or at the very least not grossly disproportionate to Singh's crime. So if there are no further questions, then I would ask that this court affirm, and I believe I'm out of time. Thank you, counsel. Just briefly, in the transcript of the sentencing, the government stated that Mr. Vecchione, who is Singh's counsel below, hammered home how the majority of the money that was structured was from Western Union. And this is on page 20. And the government didn't object to this or say this is not correct, this is incorrect. They more or less implicitly conceded that the bulk of the funds were actually Western Union money. In fact, they said there was $4.8 million that went into these accounts, the various accounts, and Singh produced records, business records, showing that's how much money went through the business. And the vast, all of it, except for what was paid from the Garcias, was legitimate business. Didn't the legitimate money still help hide the drug money? Well, that's what the district court found. But even assuming, and I've contested that in my brief, I don't know if the evidence supports that, but even assuming that it was used to hide it, this is like, you know, I was listening to Bajaj Khaji, to the actual argument in Bajaj Khaji, and it's like a drop of, it's like a little bit of one marijuana transaction in the Taj Mahal. Do you forfeit the entire Taj Mahal? You don't. And that's what this case is all about. They're seeking forfeiture of $2 million of legitimate funds based on a very, very small amount of money that he was supposedly trying to hide. And that's not, that's, I would say that that is grossly disproportionate to Mr. Singh's conduct. I see that I'm, well, I've got a few more minutes. You're actually over time. Oh, sorry. I don't have a few more minutes. Thank you very much. The matter is submitted for a decision.
judges: Nguyen, Vitaliano, Miller